No. 83-250

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

MONTANA INNKEEPERS ASSOCIATION,

                              Plaintiff and Appellant,

        vs.

CITY OF BILLINGS,

                              Defendant and Respondent.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone
              Honorable Charles Luedke, Judge presiding

Counsel of Record:

        For Appellant:

              Philip W. Strope argued, Helena, Montana
              Hjort, Lopach & Tippy, Helena, Montana
              Roger Tippy argued, Helena, Montana

        For Respondent:

              K. D. Peterson argued, Billings, Montana

        For Amicus Curiae:

              Larry Huss, Helena, Montana
              Larry Mansch argued  Helena  Montana

              Landoe, Brown Law Firm, Bozeman, Montana

---

                    Submitted,  September 13, 1983

                    Decided.   October 27, 1983

Filed: OCT 27 1983

*Ethel M. Harrison*

_____
              Clerk

Honorable John M. McCarvel, District Judge, delivered the Opinion of the Court.

This is an appeal from the District Court of the Thirteenth Judicial District of the State of Montana, in and for the County of Yellowstone, the Honorable Charles Luedke presiding.

The appellant-plaintiff, Montana Innkeepers Association, hereinafter referred to as "Innkeepers," instituted a declaratory judgment proceeding pursuant to the provisions of the Uniform Declaratory Judges Act, Title 27, Chapter 8, Montana Code Annotated, against the City of Billings, Montana, respondent-defendant, hereinafter referred to as "City," to declare Ordinance No. 83-4461 enacted by the City Council of Billings, Montana, to be illegal and void. Amicus curiae briefs were permitted to be filed by the Montana Legal Defense Fund, Inc., a division of the Montana Taxpayers Association, and by the City of West Yellowstone, Montana, which has enacted a similar ordinance.

Prior to the 1972 Constitution of the State of Montana, local governments could exercise only such powers as were expressly granted to them by the State together with such implied powers as were necessary for the execution of the powers expressly granted.

The 1972 Montana Constitution, in addition to providing for the continuance of the county, municipal and town governmental forms already existing, opened to local governmental units new vistas of shared sovereignty with the state through the adoption of the self-government charters. Whereas the 1972 Montana Constitution continues to provide that existing local governmental forms have such powers as are expressly provided or implied by law (to be liberally construed), Art. XI, Sec. 4, 1972 Mont. Const., a local

2

government unit may now also act under a self-government charter with its powers uninhibited except by express prohibitions of the constitution, law or charter, Art. XI, Sec. 6, 1972 Mont. Const.:

> "Self-government powers. A local government unit adopting a self-government charter may exercise any power not prohibited by this constitution, law or charter . . ."

The broad expanse of shared sovereignty given to self-governing local units is illustrated by section 7-1-103, MCA, which provides:

> "A local government unit with self-government powers which elects to provide a service or perform a function that may also be provided or performed by a general power government unit is not subject to any limitation in the provision of that service or performance of that function except such limitations as are contained in its charter or in state law specifically applicable to self-government units."

And again in section 7-1-106, MCA:

> "The powers and authority of a local government unit with self-government powers shall be liberally construed. Every reasonable doubt as to the existence of a local government power or authority shall be resolved in favor of the existence of that power or authority."

State ex rel. Swart v.Molitor (Mont. 1981), 621 P.2d 1100, 1102, 38 St.Rep. 71, 72-73.

Pursuant to such authorization, according to the Secretary of the Montana League of Cities and Towns, Inc., the following nineteen local governments have elected to be self-governing:

| | |
|---|---|
| Anaconda-Deer Lodge County | Glasgow |
| Billings | Helena |
| Bridger | Hingham |
| Broadview | Neihart |
| Browning | Poplar |
| Butte-Silver Bow County | Sunburst |
| Circle | Virginia City |

Clyde Park                    West Yellowstone
Ennis                         Whitefish
Fromberg

The City of Billings is a municipality in the State of Montana, which has adopted a charter form of government with self-governing powers. On August 23, 1982, the City of Billings adopted Ordinance No. 82-4461, which provides for a "fee" of $1.00 per adult transient occupant for each day of occupancy of a room in a hotel, motel, or other place of lodging within the City when the occupancy is for a period of one day or more, but not exceeding fourteen consecutive days. The ordinance was referred to the electors of the City of Billings at the election held in November 1982, the voters approved it, and the ordinance became effective January 1, 1983.

The owner or operator of a lodging establishment is obligated to collect the fee and remit the same to the City monthly, less 2 percent administrative costs, and is subject to penalty for noncollection, audit and inspection.

Section 5.10.010 of the ordinance states specifically its purpose:

> "Purpose of the occupancy fee imposed by this ordinance is to provide a portion of the revenue necessary to construct and reconstruct the arterial and collector streets of the City in a good substantial condition and a portion of the necessary expense of police and fire and allocable incidental administration costs. The fees imposed hereby will enable those persons non-resident of the City to pay a portion of the services of the city that extant within the City for their benefit and protection during their sojurn within the City."

In addition the city council could allocate up to 20 percent of revenue to promote tourism, conventions and other similar activities within the City.

4

Innkeepers is a nonprofit corporation organized under the laws of the State of Montana. It is a voluntary trade association organized and existing for the benefit of the lodging industry of the State of Montana. Members thereof are the owners and operators of lodging establishments within the City of Billings wherein they provide, among other things, overnight lodging services for the general public.

The District Court held that the express purpose of the ordinance was to generate revenue; that the ordinance does not indicate any activity that is being regulated; and concluded, as a matter of law, that the "fee" imposed by the ordinance is a tax, and not a "fee." Innkeepers do not appeal that portion of the District Court order.

The sole issue on appeal is whether the tax imposed by the ordinance is a tax prohibited by statute, and specifically section 7-1-112(1), MCA, which provides as follows:

> "A local government with self-government powers is prohibited the exercise of the following powers unless the power is specifically delegated by law:
>
> "(1) the power to authorize a tax on income or the sale of goods or services, except that this section shall not be construed to limit the authority of a local government to levy any other tax or establish the rate of any other tax."

The power to tax the sale of goods or services has not been delegated to local governments.

The District Court held that the renting of a hotel or motel room is the sale of a service, but since the ordinance imposed the tax on the person occupying the room and not on the transfer of that room, it is not a tax on the sale of goods or services. Counsel for the City argued that the renting of the room has nothing to do with the tax imposed. Therefore, every nonresident of the City upon entering the

5

City is subject to the tax. However, hotel and motel operators are the only businesses permitted to levy the tax. Restaurants, bars and other businesses may not collect the tax from a transient nonresident. This reasoning of course is fallacious. The renting of the room cannot be divorced from the collection of the tax. Therefore, the tax is a tax on the sale of a service and prohibited by section 7-1-112(1), MCA. J. A. Tobin Const. Co. v. Weed (1965), 158 Colo. 430, 407 P.2d 350. 68 Am.Jur.2d Sales and Use Taxes, § 5.

Hotels and motels sell a product or service which is temporary lodging. The occupant is the consumer since he purchases the service. No title changes hands, but the consumer comes into temporary possession of the room. A tax placed on that transaction is a sales tax.

The District Court relied as sole support for its decision on the case Teachers Retirement System of Georgia v. City of Atlanta (1982), 249 Ga. 196, 288 S.E.2d 200. That case held a public entity cannot claim its tax-exempt status on properties it has acquired through foreclosure, for that would result in significant loss of revenue to the taxing authorities. The entity acquires title to those properties subject to existing taxes. The Georgia court merely decided who must pay the tax.

A crucial distinction must be made between Teachers Retirement System and the case at hand. In the Georgia case, the validity of constitutionality of the taxes was not at issue. The question of whether the Atlanta hotel-motel excise tax was or was not a sales tax was not before the court. Teachers Retirement System based its entire case on the sole argument that it enjoyed tax-exempt status. Whether a tax is actually imposed on the vendor, or upon the occupant, may be important for deciding whether the taxing

6

authorities can collect the tax. It is of no importance in determining the nature of the tax--whether it is or is not a sales tax. Therefore, Teachers Retirement System is of minimal significance to the issue of whether the City of Billings has imposed an invalid sales tax.

Ordinance No. 82-4461 enacted by the City is illegal and void. The judgment of the District Court is reversed.

_John M. M<sup>c</sup> Carvel_

Honorable John M. McCarvel, District Judge, sitting in place of Mr. Justice Frank B. Morrison, Jr.

We concur:

Chief Justice

Justices