R.E.N., S.D.W., and C.B.H., Petitioners,

v.

The **CITY OF COLORADO SPRINGS**, Respondent.

**Nos. 90SC659, 90SC670 and 90SC693.**

Supreme Court of Colorado,
En Banc.

Jan. 13, 1992.

Gerald A. Kimble, Jr., Colorado Springs, for petitioners R.E.N. and C.B.H.

William H. Kirkman, Jr., Colorado Springs, for petitioner S.D.W.

James G. Colvin II, City Atty., Kurt G. Stiegelmeier, Pros. Atty., Colorado Springs, for respondent.

City of Aurora, Charles H. Richardson, George W. Zierk, III, Aurora, for amicus curiae City of Aurora.

Colorado Mun. League, Kathleen E. Haddock, Staff Atty., Denver, for amicus curiae Colorado Mun. League.

Justice VOLLACK delivered the Opinion of the Court.

This is ·a consolidated appeal by three juveniles, R.E.N., S.D.W., and C.B.H., from district court rulings that the municipal court of Colorado Springs is not required to afford a juvenile the procedures in the Colorado Children's Code,[1] Title 19, §§ 19–1–

---

**1.** The Children's Code provides various proce- dural safeguards to juveniles in dependency,

101 to 19–11–110, 8B C.R.S. (1991 Supp.), when a juvenile is prosecuted for violating a municipal ordinance, the penalty for which may not be a jail sentence. We affirm the district court rulings.

## I.

### R.E.N. and S.D.W.

On September 30, 1989, S.D.W. was charged in Colorado Springs Municipal Court with shoplifting in violation of section 21–6–401 of The Code of the City of Colorado Springs (1980) (the City Code). On February 27, 1990, R.E.N. was charged in municipal court with conspiracy to commit shoplifting in violation of section 21–1–107 of the City Code. At the time of their offenses, S.D.W. was sixteen years old and R.E.N. was fifteen years old. Prior to their trials, each juvenile filed a motion to dismiss the charges, contending that the municipal court did not have jurisdiction to try the case; that the Colorado Children's Code (the Children's Code) should be liberally construed to give effect to its purpose to serve the welfare of children and the best interests of society; that the prosecution of juveniles in municipal court violated equal protection of laws; and finally, that the City violated the Home Rule Amendment because it did not provide the procedural safeguards that are afforded juveniles prosecuted in juvenile court under the Children's Code.

In each case, the municipal court found that it had jurisdiction to hear the case and concluded that the City must provide juveniles prosecuted under the municipal ordinance with the same procedural safeguards that juveniles are afforded when prosecuted under the Children's Code. The municipal courts granted the motions for dismissal, stating that the City of Colorado Springs (the City) violated the Home Rule Amendment, Colo. Const. art. XX, § 6, by

not affording the juveniles the procedural provisions in the Children's Code.

The City filed an appeal in each case with the El Paso County District Court, which ordered the cases consolidated. The City argued that the municipal courts erred in concluding (1) municipal courts must prosecute juveniles in accordance with the Children's Code, and (2) the failure to provide such procedures violated the Home Rule Amendment. Additionally, the City contended that, even though the municipal court procedures were different than the juvenile court procedures, prosecution of juveniles in municipal court did not violate equal protection of the law. The district judge, Judge Toth, ruled that the City's prosecution of the juvenile offenders, without affording the juveniles the procedures in the Children's Code, did not violate the Home Rule Amendment or equal protection of laws and remanded the cases to the municipal courts.

### C.B.H.

On February 2, 1990, C.B.H. was charged with unlawful concealment of a weapon in violation of section 21–7–102 of the Colorado Springs City Code. C.B.H. was fifteen years old on the day of the offense. On the day set for trial, C.B.H. filed a motion to dismiss, arguing that juveniles prosecuted in municipal court should be afforded the procedural rights in the Children's Code and that a failure to provide these rights violates the Home Rule Amendment and equal protection of laws. The municipal court denied the motion to dismiss and, after a bench trial, convicted C.B.H. of unlawful concealment. C.B.H. appealed the conviction to the El Paso County District Court. In ruling on the appeal, the district judge, Judge Martinez, incorporated Judge Toth's ruling in S.D.W.'s and R.E.N.'s case and, in addition, concluded that juveniles prosecuted in the

---

neglect, delinquency and other juvenile proceedings in juvenile court. *See, e.g.,* § 19–1–105, 8B C.R.S. (1991 Supp.) (right to counsel); § 19–1–107, 8B C.R.S. (1991 Supp.) (preparation of social study and report); § 19–2–902, 8B C.R.S. (1991 Supp.) (expungement of records). These procedural safeguards are required in addition

to the basic due process safeguards. *See City of Greenwood Village v. Fleming,* 643 P.2d 511, 516 (Colo.1982) (guilt beyond a reasonable doubt and the privilege against self-incrimination are basic criminal safeguards in a prosecution for violation of a municipal ordinance).

municipal court for violating municipal ordinances are not similarly situated to juveniles prosecuted in district court for violating state statutes.

 Each of the juveniles petitioned for certiorari in this court pursuant to C.A.R. 49(a)(1). We ordered the three cases consolidated and granted certiorari to determine whether the City of Colorado Springs violates the Home Rule Amendment when it prosecutes juveniles for violating city ordinances which do not carry a jail sentence, without affording the juveniles the rights provided in the Children's Code.[2]

## II.

 The Home Rule Amendment grants home rule municipalities the authority to enact and enforce ordinances involving matters of local affairs. Colo. Const. art. XX, § 6; *see City and County of Denver v. State*, 788 P.2d 764, 767 (Colo. 1990). In determining the extent of this authority, this court has recognized three broad categories into which regulatory matters fall. *Id.* First, in matters of local concern, both home rule cities and the state may legislate. *City of Greenwood Village v. Fleming*, 643 P.2d 511, 515 (Colo.1982). The local ordinance, however, supersedes a conflicting state statute on the same local matter. *Id.* Second, in matters of statewide concern, home rule cities are without the power to act unless authorized by the constitution or state statute. *City and County of Denver*, 788 P.2d at 767. Third, in matters of mixed local and state con-

cerns, a home rule city ordinance may coexist with a state statute if there is no conflict between the local ordinance and state statute. *Id.* If there is a conflict, the state statute supersedes the local ordinance. *Id.*

The district courts concluded, and the parties all agree in this appeal, that the City's ordinance scheme involves matters of mixed local and state concerns. We agree. Both the City and the State have a strong interest in prosecuting and deterring juveniles who commit minor offenses such as shoplifting and unlawful concealment. *Cf. Quintana v. Edgewater Mun. Court*, 179 Colo. 90, 92, 498 P.2d 931, 932 (1972) (shoplifting of items of relatively small value "constitutes a great problem and should be combated not only by our state authorities in state courts, but by our police departments in municipal courts").

Thus, we must ascertain whether the City's ordinance scheme conflicts with the Children's Code. The test to determine whether a conflict exists is whether the City's ordinance scheme authorizes what the Children's Code forbids, or forbids what the Children's Code expressly authorizes. *See Sant v. Stephens*, 753 P.2d 752, 756 (Colo.1988); *City of Aurora v. Martin*, 181 Colo. 72, 75, 507 P.2d 868, 869–70 (1973).

## A.

 The juveniles contend that a conflict exists because the City's ordinance scheme does not provide them the procedures in

---

**2.** In the municipal and district courts, the juveniles challenged the jurisdiction of the municipal court to try the cases. Both the municipal courts and the district court, relying on *Wigent v. Shinsato*, 43 Colo.App. 83, 601 P.2d 653 (1979), found that the municipal courts had jurisdiction. In their opening briefs, all three defendants conceded jurisdiction. However, in a reply brief, S.D.W. challenged the jurisdiction of the municipal court.

When a juvenile defendant is charged under a municipal ordinance which does not carry a jail sentence, "the General Assembly has not intended by the Children's Code to give sole and exclusive jurisdiction to the juvenile court." *Wigent*, 43 Colo.App. at 85, 601 P.2d at 654. By not retaining exclusive jurisdiction over municipal ordinances, the penalty for which may *not* be a

jail sentence, the State Code implicitly recognizes that municipal courts retain concurrent jurisdiction over such offenses. *Cf. City and County of Denver v. District Court*, 675 P.2d 312, 314 (Colo.1984) ("juvenile and district courts may exercise concurrent jurisdiction over cases affecting the interests of a particular child"); *see also Quintana v. Edgewater Mun. Court*, 179 Colo. 90, 92, 498 P.2d 931, 932 (1972) (stating that "[m]unicipal courts are particularly adaptable to the handling of the crime of shoplifting of articles of relatively small value"); *Wigent*, 601 P.2d at 654 (concluding municipal court had jurisdiction to prosecute juvenile for violation of shoplifting ordinance). Accordingly, the municipal court had jurisdiction to prosecute S.D.W. and the other juveniles.

the Children's Code. They argue that because the municipal courts obtained jurisdiction under section 19–2–102, 8B C.R.S. (1991 Supp.), of the Children's Code, they should be afforded the remainder of the statutory procedures in the Children's Code. We disagree.

The Children's Code does not prohibit the City from prosecuting juveniles without affording juveniles the procedures in the Children's Code. Neither party has found, nor have we discovered, any provision stating that all the procedures in the Children's Code apply to municipal court proceedings.

Moreover, the ordinance scheme does not forbid what the Children's Code authorizes. The Children's Code provides procedural safeguards to juveniles charged in juvenile court under a petition in delinquency. The City's ordinance scheme does not prohibit the juvenile court from providing these procedures. In fact, the City's ordinance scheme does not even forbid the municipal court from adopting the procedures. Section 1–2–102(d) of the Colorado Springs Municipal Code provides: "The Presiding Judge of the Municipal Court may promulgate such rules or orders regarding the procedural processing of minor offenders appearing before the municipal court as he may, from time to time, deem appropriate."

Municipalities are not required to follow the procedures in the Children's Code simply because the Children's Code contains detailed and comprehensive procedures for juvenile delinquency proceedings brought in state juvenile courts. *See People v. Wade,* 757 P.2d 1074, 1076 (Colo.1988) ("city's choice of sentencing scheme different from the state's is well within the city's constitutional power as a home rule city"). To impose such a requirement "would diminish, to a large degree, the independence and self-determination vested in those cities by the constitution." *Id.* at 1077. Municipal courts are only required to afford the constitutionally mandated procedures that protect an individual's due process rights.

*See City of Greenwood Village v. Fleming,* 643 P.2d 511, 516 (Colo.1982) (guilt beyond a reasonable doubt and the privilege against self-incrimination are basic criminal safeguards in a prosecution for violation of a municipal ordinance). The additional procedures that the juveniles request are not constitutionally based due process protections but are statutory procedures provided to juveniles in state juvenile court proceedings.[3]

### B.

■ The juveniles also contend that the prosecution of juveniles in the municipal court as a criminal proceeding conflicts with this court's holdings that petition-in-delinquency proceedings in juvenile court are civil in nature. *See S.A.S. v. District Court,* 623 P.2d 58, 60 (Colo.1981) ("a petition in delinquency is classified as civil in character"). Once again, we disagree because this alleged difference does not create a situation in which the City's ordinance scheme authorizes what the Children's Code forbids, or forbids what the Children's Code expressly authorizes.

The Children's Code does not provide that juvenile proceedings in municipal court are civil in nature. *See generally* Title 19, §§ 19–1–101 to 19–11–110, 8B C.R.S. (1991). Nor does the City's ordinance scheme forbid the state juvenile courts from prosecuting petitions in delinquency as civil proceedings. *See generally* The Code of the City of Colorado Springs (1980). The City is not claiming original exclusive jurisdiction over these minor offenses, but is simply exercising its concurrent jurisdiction to prosecute these types of cases.[4]

Because neither political entity is encroaching on the regulatory sphere of the other, the nature and quality of juvenile proceedings in one political entity does not dictate the procedures to be provided in the other. Both entities can establish the type of proceedings they deem appropriate,

---

**3.** The juveniles do not contend that the municipal courts denied them their constitutionally based due process rights.

**4.** The juveniles also could have been prosecuted under §§ 18–4–401 and 18–4–406, 8B C.R.S. (1986), shoplifting, and § 18–12–105, 8B C.R.S. (1986 & 1991 Supp.), unlawful concealment.

within constitutional bounds, to prosecute juveniles within their jurisdiction.

## III.

The intent of the General Assembly, ascertained from the Children's Code, supports our decision that no conflict exists between the ordinance scheme and the Children's Code. When construed *in pari materia*,[5] the Children's Code reflects the General Assembly's intent that, generally, *the Children's Code applies only to juvenile proceedings brought in juvenile court* and accordingly, does not apply to proceedings properly brought in a municipal court involving juveniles prosecuted under municipal ordinances.

When construing a statute, the intent of the legislature is to be ascertained and given effect whenever possible. *Walgreen Co. v. Charnes*, 819 P.2d 1039, 1044 (Colo.1991); *People v. Sneed*, 183 Colo. 96, 514 P.2d 776, 778 (1973). "Statutes cannot be construed in such a way as to defeat legislative intent." *Walgreen*, 819 P.2d at 1043; *People v. Myers*, 182 Colo. 21, 510 P.2d 430, 432 (1973). When discerning legislative intent, this court looks first and foremost to the language of the statute itself. *B.B. v. People*, 785 P.2d 132, 138 (Colo.1990).

In section 19–1–103(17), 8B C.R.S. (1991), the legislature defines the words "court" and "juvenile court," which are found throughout the provisions of the Children's Code. This section provides: "As used in this title, .... 'Juvenile court' or 'court' means the juvenile court of the city and county of Denver or the juvenile division of the district court outside of the city and county of Denver." § 19–1–103 & –103(17).

When the legislature defines a term in a statute, statutory construction requires that the term be given its statutory meaning, *see* C. Dallas Sands, *Statutes and Statutory Construction* § 27.02 (4th ed. 1985) ("to ignore a definition section is to refuse to give legal effect to a part of the statutory law of the state"), and such definition is applicable to the term whenever it appears in the statute, except where contrary intention plainly appears. *Oliver v. City of Tulsa*, 654 P.2d 607, 611 (Okl.1982). Statutory definitions of words used elsewhere in the same statute furnish authoritative evidence of legislative intent. *Sierra Club v. Clark*, 755 F.2d 608, 613 (8th Cir.1985); *see also* 1A C. Dallas Sands, *Statutes and Statutory Construction* § 27.02 (Norman J. Singer ed., 4th ed. 1985) (stating that such "internal legislative construction is of the highest value and prevails over ... other extrinsic aids").

Thus, reading the provisions of the Children's Code in conjunction with the definition of "court" and "juvenile court" provided by the General Assembly evinces the legislature's intent to limit the application of the Children's Code's procedures to proceedings in juvenile court. For example, the juveniles state that section 19–2–401, 8B C.R.S. (1991 Supp.), gives them the right to informal pretrial hearings and procedures. However, when this section is read in conjunction with the Children's Code's definition of "court" in section 19–1–103(17), this section provides:

> (2) Hearings shall be held before the ["Juvenile court ... or the juvenile division of the district court"] without a jury, except as provided in section 19–2–501, and may be conducted in an informal manner. The general public shall not be excluded unless the ["Juvenile court ... or the juvenile division of the district court"] determines that it is in the best interest of the juvenile ... to exclude the general public, and, in such event, the

---

5. The Children's Code must be construed *in pari materia* in order to effectuate legislative intent, *Walgreen Co. v. Charnes*, 819 P.2d 1039, 1043 (Colo.1991), and "to give consistent, harmonious and sensible effect to all its parts." *Id.; J.A. Tobin Constr. Co. v. Weed*, 158 Colo. 430, 407 P.2d 350, 353 (1965).

*In pari materia* is a rule of statutory construction which requires the various portions of the statute to be read together with all the other statutes relating to the same subject or having the same general purpose so that the legislature's intent may be ascertained. *See Black's Law Dictionary* 791 (6th ed. 1990); *Barron's Law Dictionary* 234 (1984).

["Juvenile court ... or the juvenile division of the district court"] shall admit only such persons as have an interest in the case[.]

§ 19-2-401(2).

The General Assembly did not include "municipal courts" in the definition of "court" in section 19-1-103(17). The language in section 19-1-103(17) is clear and unambiguous that "court" or "juvenile court" as used in the Children's Code means the juvenile court of Denver or the juvenile division of any district court outside of Denver.[6] If this court concluded that the State Code applied to juvenile proceedings in municipal court, we would be expanding the definition of "court" in section 19-1-103(17) of the Children's Code to include "municipal court."

We conclude that, as long as a case is properly within the jurisdiction of the municipal court, the municipal court is not required to afford a juvenile the procedures in the Colorado Children's Code when the juvenile is being prosecuted for violating a municipal ordinance, the penalty for which may not be a jail sentence.

We affirm the judgments of the district courts.

---

6. That the General Assembly intended the Children's Code to be limited in its application can also be discerned from the legislature's declaration of the Children's Code's purpose in § 19-1-102, 8B C.R.S. (1991 Supp.). This section states that the purpose is "[t]o secure for each child *subject to these provisions* such care and guidance, preferably in his own home, as will best serve *his welfare and the interests of society*." The emphasized language indicates that not all juveniles will be subject to the provisions in the Children's Code.

Additionally, the interaction between the Children's Code and the Colorado Rules of Juvenile Procedure is consistent with the legislature's intent. Section 19-1-106 states that the "Colorado rules of juvenile procedure shall apply in all proceedings under this title." C.R.J.P. 1, which addresses the applicability of the rules, states that the "rules [of juvenile procedure] *govern proceedings brought in the juvenile court* under Title 19, ... also hereinafter referred to as the Children's Code." (Emphasis added.) The reference in the Children's Code to the juvenile rules applying to all proceedings under the Children's Code—construed together with the juvenile rules' limited application to proceedings in juvenile court—is consistent with the legislative intent evidenced in § 19-1-103(17) that the Children's Code applies only to cases brought in juvenile court.